Steven D. Turner (State Bar No. 172852)
sturner@jonesturner.com
William S. Hoang (State Bar No. 269791)
whoang@jonesturner.com
JONES TURNER, LLP
2 Venture, Suite 220
Irvine, California 92618
Tel: 949-435-4100
Fax: 949-435-4105

Attorneys for Defendant THE HARTFORD STEAM
BOILER INSPECTION AND INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| TELLONE PROFESSIONAL CENTER LLC, | Case No.: 8:19-cv-02479 JLS (KESx) |
| Plaintiff, | District Judge Josephine L. Staton |
| v. | **DEFENDANT THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| ALLSTATE INSURANCE COMPANY, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY and DOES 1 through 10, inclusive, | |
| Defendants, | Date: December 17, 2021<br>Time: 10:30 a.m.<br>Courtroom: 10A |
| | Action Filed:   November 15, 2019<br>FPTC Date:   November 15, 2021 |

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 2

     A.    Tellone's Allegations ................................................................. 2

     B.    The Reinsurance Agreement Between Allstate and HSB ......................... 4

     C.    Tellone Admits it Lacks Any Evidence to Support its Claims Against HSB ............................................................................... 5

III.  LEGAL AUTHORITY FOR SUMMARY JUDGMENT .............................. 6

IV.  LEGAL ARGUMENTS ........................................................................... 6

     A.    There is Nothing Unlawful About HSB's Reinsurance Arrangement with Allstate ....................................................... 6

          i.    Reinsurance is Expressly Permitted by Law ....................... 6

          ii.   The Reinsurance Agreement Between HSB and Allstate Did Not Alter Any of the Terms or Obligations Under the Policy and Thus There is Nothing Unlawful About HSB's Investigation of the Claim as a Reinsurer ....................................................... 9

     B.    There is Nothing Unfair About Reinsurance ........................................... 12

     C.    There is Nothing Fraudulent About Reinsurance .................................... 13

V.   TELLONE DOES NOT HAVE ANY VALID BASES FOR ITS REQUESTED REMEDIES ................................................................... 15

     A.    Tellone's Request for an Injunction is Moot and Improper .................... 15

     B.    Tellone Has No Plausible Claim for Restitution .................................... 16

VI.  TELLONE ADMITS IT HAS AN ADEQUATE REMEDY AT LAW ...... 18

VII. CONCLUSION ..................................................................................... 20

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Cases**

3

*Ascherman v. General Reinsurance Corp.*, 183 Cal. App. 3d 307, 311 fn. 5 (1986) .... 8

4

*Barquis v. Merchants Collection Assn*., 7 Cal.3d 94, 113 (1972) .................................. 7

5

*Brownfield v. Daniel Freeman Marina Hosp.,* 208 Cal. App. 3d 405, 410 (1989) ..... 18

6

*Cambridge Electronics Corp. v. MGA Electronics, Inc.,* 227 F.R.D. 313, 337 (C.D. Cal. 2004) ................................................................................................................... 6

7

*Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal. 4th 358, 368 (2007).........7, 8, 12

8

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322-323 ............................................... 6

9

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 184 (1999) ....................................................................................7, 15, 18

10

*Congress of California Seniors v. Catholic Healthcare West*, 87 Cal. App. 4th 491 (2001) ................................................................................................................... 15

11

12

*Day v. AT & T Corp*., 63 Cal.App.4th 325, 340 (1998) ............................................... 16

13

*Diaz v. Kay-Dix Ranch*, 9 Cal. App. 3d 588, 599 (1970) ........................................... 15

14

*E.A. Taliaferro v. Dorothy Taliaferro,* 144 Cal. App. 2d 109, 113 (1956) ................. 18

15

*Eastman v. Allstate Ins. Co*., 2014 WL 5355036 (S.D. Cal. 2014) ............................ 16

16

*Excess & Cas. Reinsurance Ass'n v. Insurance Com'r, Etc*., 656 F.2d 419, 492 (1981) 8

17

*Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir.) ............. 18

18

*Katzman v. Allstate Ins. Co*., 2010 WL 11515454 (C.D. Cal. 2010) .......................... 16

19

*Knox v. Phoenix Leasing Inc.,* 29 Cal. App. 4th 1357, 1365 (1994) ........................... 18

20

*Lipton v. Superior Court,* 48 Cal. App. 4th 1599, 1617 (1996) ..............................8, 13

21

*Marino v. Countrywide Financial Corp.*, 26 F.Supp.3d 955, 963 (C.D. Cal. 2014) ... 13

22

*Matter of Combined Metals Reduction Co.* 557 F.2d 179, 189 (9th Cir. 1977)........... 16

23

*McDonald v. Coldwell Banker,* 543 F.3d 498, 506 (9th Cir.2008) ............................. 12

24

*Morris v. Paul Revere Life Ins. Co.,* 109 Cal. App. 4th 966, 973 (2003) ................... 14

25

*Peel v. BrooksAmerica Mortg. Corp.*, 788 F.Supp.2d 1149, 1165 (C.D. Cal. 2011)... 12

26

*People ex rel. Dept. of Transportation v. Naegele Outdoor Advertising Co*., 38 Cal. 3d 509, 523 (1985) ................................................................................................... 15

27

*Pinel v. Aurora Loan Servs., LLC*., 814 F.Supp.2d 930, 941 (N.D. Cal. 2011)........... 13

28

*Prudential Home Mortgage Co. v. Superior Court,* 66 Cal. App. 4th 1236, 1250 (1998) ............................................................................................................. 18

*Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1302 (1993) ......................................................................................................... 15

*Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th, 717-718 (2001) ... 7

*Tellone Professional Center LLC v. Allstate Insurance Company* (C.D. Cal. 2021) 2021 WL 1254360 .............................................................................. passim

*Three Rivers Hydroponics, LLC v. Florists' Mutual Insurance Company,* 2018 WL 791405 (W.D. Pa. 2018) ............................................................................. 10

*Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1150–51 (2001) .............. 14

*Wolfe v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 4th 554 (1996) ............. 15

*Zenith Ins. Co. v. Cozen O'Connor,* 148 Cal. App. 4th 998, 1007 (2007) .................... 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................................... 6

Cal. Ins. Code § 620 ............................................................................................ 7

Cal. Ins. Code § 623 ............................................................................................ 8

Cal. Ins. Code § 922.2 ......................................................................................... 8

**Rules**

Federal Rules of Civil Procedure, Rule 56(a) ...................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action arises from a dispute between plaintiff Tellone Professional Center, LLC ("Tellone") and defendant Allstate Insurance Company ("Allstate") regarding whether Tellone is entitled to any insurance policy benefits following alleged damage to Tellone's heating, ventilation and air conditioning ("HVAC") system.  Tellone contends that Allstate erroneously denied policy benefits owed to Tellone for the subject loss and unreasonably handled its insurance claim.  Defendant The Hartford Steam Boiler Inspection and Insurance Company ("HSB") reinsures Allstate for certain equipment breakdown coverages under the policy at issue.

Tellone filed its initial Complaint in this action in November 2019, which included a claim for unfair business practices pursuant to Business and Professions Code section 17200 ("UCL Claim") against HSB.  Thereafter, HSB filed a motion for judgment on the pleadings on the grounds that Tellone failed to properly allege a UCL Claim against HSB.  The Court granted HSB's motion (ECF No. 50), but granted Tellone leave to amend.  In granting HSB's motion, the Court noted as follows: "Tellone seemingly conceded that if Defendants' agreement is one for reinsurance, then it has no UCL claim here."[1]

Tellone filed a First Amended Complaint on February 16, 2021.  Despite losing on its UCL Claim once before, Tellone still maintains its debunked theory that HSB is really a "secret underwriter" for the Allstate policy.  As further explained below and based on the undisputed evidence, Tellone's UCL Claim against HSB fails again as a matter of law.

Tellone contends that HSB's affiliation with Allstate as a reinsurer with respect to the subject insurance policy constitutes an unfair business practice as it forced

---

[1] *Tellone Professional Center LLC v. Allstate Insurance Company* (C.D. Cal. 2021) 2021 WL 1254360, at *5 ("*Tellone v. Allstate, et al.*")

Tellone to deal with two separate insurance carriers which potentially created a conflict of interest. With respect to the UCL Claim against HSB, there is nothing "unfair" about HSB's reinsurance with Allstate. It is well-established that reinsurance is expressly authorized by California's Insurance Code and is widely recognized by courts to benefit society as a whole. Additionally, an insured such as Tellone is not a party to the reinsurance contract and generally has no rights against HSB (the reinsurer) or to the proceeds of the reinsurance.

Further, Tellone has failed to present any evidence showing it is entitled to any restitution from HSB. Tellone has also expressly admitted that it has an adequate legal remedy against HSB – but simply chose not to pursue it. Tellone's request for an injunction also remains moot as it is complaining about past – not future – conduct. Accordingly, Tellone cannot maintain a UCL Claim against HSB.

For these reasons and the reasons discussed below, Tellone's UCL Claim fails as a matter of law because Tellone has not, and cannot, meet its burden of persuasion at trial.

## II.  FACTUAL BACKGROUND

### A.  Tellone's Allegations

In its First Amended Complaint ("FAC"; ECF No. 53; Exhibit G to the Declaration of Steven D. Turner), Tellone relies on the following allegations to support its UCL Claim against HSB:

Tellone purchased a commercial property insurance policy from Allstate, under policy number 648112729 (the "Policy"). (FAC, ¶ 6; Uncontroverted Fact ("UF")[2] No. 2.) The Policy contains an "Equipment Breakdown Endorsement" (the "EB Endorsement"). (FAC at ¶ 16.)

Tellone alleges there is a written contract between Allstate and HSB wherein

---

[2] The Uncontroverted Facts refer to the facts set forth in HSB's Statement of Uncontroverted Facts and Conclusions of Law concurrently filed herewith.

2

they agreed that:

> (1) HSB would be the primary insurer of the coverage under the EB Endorsement; (2) HSB, and not Allstate, would actually adjust claims that might fall within the scope of coverage the EB Endorsement …; (3) HSB, and not Allstate, would make the final decision as to whether or not to pay claims under the EB Endorsement; and (4) HSB, and not Allstate, would pay all claims that were covered under the EB Endorsement, in exchange for a portion of the premium charged by Allstate for the Allstate Policy.

(FAC, ¶ 17.)

Tellone alleges that on June 18, 2018, Allstate sent a letter to Tellone advising, among other things, that the Policy provided equipment breakdown coverage which was underwritten by HSB.  (FAC, ¶ 47.)

Ultimately, Allstate denied Tellone's claim and Tellone disagreed with the denial.  (FAC, ¶¶ 54 and 59.)  This lawsuit followed.

Tellone further alleges that "HSB's practices are unlawful, unfair and fraudulent in that HSB does not require other insurers to inform their insureds that HSB is essentially the de facto insurer for equipment breakdown coverage, not Allstate, even though Tellone and other similarly situated insureds buy Allstate policies based on Allstate's reputation." (FAC, ¶ 98.)

Through its claims against HSB, Tellone seeks the following:

- "a restitutionary order or judgment restoring to them money or property which was acquired by HSB … including but not limited to a full refund, or partial refund based on HSB's share of the premiums paid on the Allstate Policy, Tellone's prior Allstate policies and other similar policies …"  (FAC, ¶ 102.)

- "a preliminary and permanent injunction be issued against HSB enjoining HSB from continuing to engage in the unlawful, unfair and fraudulent business practices alleged herein of not advising insureds prior to their purchasing policies with equipment breakdown coverage underwritten by HSB of this fact, and mandating that HSB: (1) disclose in writing that HSB is the insurer for

3

equipment breakdown coverage and other any other coverages underwritten by HSB before issuing property insurance with equipment breakdown coverage and other coverage underwritten by HSB; and (2) disclose these facts in the policies themselves, with respect to policies issued or delivered in California." (FAC, ¶ 103.)

## B.   The Reinsurance Agreement Between Allstate and HSB

In June 2011, Allstate and HSB entered into an Equipment Breakdown Reinsurance Agreement wherein HSB agreed to reinsure certain of Allstate's equipment breakdown liabilities.  (UF No. 1.)  The equipment breakdown coverage afforded by the EB Endorsement was covered by this reinsurance agreement. (Declaration of Steven Smith, ¶¶ 3-4.)

Allstate's reinsurance agreement with HSB did not alter any of the terms, conditions, or provisions of the Policy.  (UF No. 3.)  With respect to claims that fall within the equipment breakdown portion of the Policy, at no time was HSB responsible for making any determination regarding whether any coverage was afforded to Tellone under the Policy for such claims.  (UF No. 4.)  Nor was HSB ever responsible for making any payments to Tellone for its claimed losses, whether under the Policy or otherwise.  (UF No. 5.)  All such payments, if any were warranted, remained Allstate's responsibility.  (UF No. 5.)

HSB did not underwrite any portion of the Policy.  (UF No. 6.)  While Allstate's June 18, 2018 letter and a denial letter contain references to HSB as an "underwriter," Allstate has confirmed that such reference to HSB as an "underwriter" was incorrect and made in error because HSB played no role in Allstate's underwriting of the Policy.  (Declaration of Jaclyn Groff, ¶ 25.)

Further, HSB is not, and has never been, a party to the Policy.  (UF No. 7.) Allstate also did not assign or transfer any of its duties or obligations under the Policy to HSB and at no time has HSB assumed any of Allstate's duties and obligations pursuant to the Policy.  (UF Nos. 8-9.)  Moreover, the reinsurance agreement granted

HSB the right to investigate claims or losses arising under coverages subject to the agreement.  (UF No. 10.)

## C. Tellone Admits it Lacks Any Evidence to Support its Claims Against HSB

In its FAC *and* discovery responses, Tellone admits that the subject insurance policy/policies make no mention of HSB. (See, e.g., Tellone's Response to Interrogatory No. 3[3]; FAC, ¶ 18.).  Tellone simply makes the unsubstantiated conclusion that HSB *underwrote*[4] the equipment breakdown coverage under the policies. (FAC, ¶ 89.)  However, through the deposition testimony of its own corporate designee, Tellone admitted that all along it thought Allstate, *not HSB*, underwrote the Policy.  (Deposition Transcript of Dino Tellone, Vol II[5] ("Tellone Depo"), 665:2-5.)

In fact, Tellone has admitted that prior to the subject loss, it did not even know that HSB existed.  (Tellone Depo, 663:3-5.)  Tellone also admits that it does not know of any facts showing that Allstate somehow secretly transferred any of its rights and obligations under the Policy to HSB.  (*Id*. at 667:5-11.)  Tellone is further unaware of any facts showing that it was HSB, and not Allstate, that ultimately denied Tellone's claim.  (*Id*. at 667:25-668:7.)

Tellone also admits that it did not pay any premiums to HSB for the Policy and Tellone is not aware of any facts showing that HSB collected any premiums from Tellone.  (UF No. 11.)

Further, Tellone is not aware of any facts suggesting that HSB somehow

---

[3] See Exhibit C to the Declaration of Steven D. Turner ("Turner Decl.").

[4] As further explained below, *underwriting* involves determining which risks to insure and which to reject whereas *reinsurance* is a special form of insurance obtained by insurance companies to help spread the burden of indemnification.

[5] Relevant portions of the deposition transcript of Dino Tellone, Vol II, from April 13, 2021 are attached to the Turner Decl. as Exhibit E.

1  secretly underwrote coverages for Tellone or any other insurers in California.  (UF

2  No. 12.)

3      Curiously, Tellone's corporate representative was even unsure whether Tellone

4  had sued HSB in this lawsuit.  (Tellone Depo, 676:1-9 and 677:18-21.)

5  **III.   LEGAL AUTHORITY FOR SUMMARY JUDGMENT**

6      Pursuant to Federal Rules of Civil Procedure, Rule 56(a), "the court shall grant

7  summary judgment if the movant shows that there is no genuine dispute as to any

8  material fact and the movant is entitled to judgment as a matter of law."  Summary

9  judgment is appropriate if the opposing party lacks sufficient evidence to carry its

10  ultimate burden of persuasion at trial (i.e., it does not have evidence from which a jury

11  could find an essential element of the opposing party's claim.)  *Celotex Corp. v.*

12  *Catrett* (1986) 477 U.S. 317, 322-323.  "A complete failure of proof concerning an

13  essential element of the nonmoving party's case necessarily renders all other facts

14  immaterial."  *Id*. at 323.

15  **IV.   LEGAL ARGUMENTS**

16      Tellone's cause of action for unfair business practices against HSB is the only

17  cause of action Tellone has asserted against HSB.  Tellone's unfair business practices

18  claim is asserted under The Unfair Competition Law ("UCL").  Cal. Bus. & Prof.

19  Code § 17200 et seq.  The UCL prohibits "unfair competition" and defines this term

20  to include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. &

21  Prof. Code § 17200.  Tellone bears the burden of proof on its UCL Claim.  *Cambridge*

22  *Electronics Corp. v. MGA Electronics, Inc.,* 227 F.R.D. 313, 337 (C.D. Cal. 2004).

23      For the reasons explained below, Tellone's UCL Claim fails as a matter of law.

24      **A.   There is Nothing Unlawful About HSB's Reinsurance Arrangement**

25         **with Allstate**

26         **i.   Reinsurance is Expressly Permitted by Law**

27      An "unlawful" business activity under the UCL includes "anything that can

28  properly be called a business practice and that at the same time is forbidden by law."

*Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th, 717-718 (2001), citing *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 113 (1972).  California's Supreme Court has established that "a plaintiff may not bring an action under the unfair competition law if some other provision bars it. … In other words, courts may not use the unfair competition law to condemn actions the Legislature permits."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 184 (1999).

Here, contrary to Tellone's unsubstantiated conclusions, HSB has not "underwritten" coverage under the EB Endorsement for the Policy.  In fact, both Allstate and HSB have confirmed in this action that HSB did not "underwrite" any portion of the Policy, and Tellone has failed to present any evidence to the contrary.

"'Underwriting' is a label commonly applied to the process, fundamental to the concept of insurance, of deciding which risks to insure and which to reject in order to spread losses over risks in an economically feasible way."  *Smith, supra,* 93 Cal.App.4th at 726.  In this case, Tellone has not alleged that Allstate and/or HSB improperly decided which risks to insure or reject as part of the issuance of the Policy.  In other words, underwriting is not at issue in this case.

Instead, Tellone's allegations describe what is commonly known as "reinsurance."  It is well established that "[r]einsurance is a special form of insurance obtained by insurance companies to help spread the burden of indemnification."  *Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal. 4th 358, 368 (2007) (quotation marks omitted).  Moreover, California's Insurance Code specifically allows Allstate to reinsure itself "against loss or liability by reason of such original insurance," which is exactly what Allstate did in this case – procure reinsurance from HSB to reinsure itself against loss or liability in connection with the Policy.  (Cal. Ins. Code § 620.)

"A reinsurance company typically contracts with an insurance company to cover a specified portion of the insurance company's obligation to indemnify a policyholder." *Catholic Mut. Relief Soc'y,* 42 Cal. 4th at 368.  It need not cover the

full policy.  Indeed, California's Supreme Court has acknowledged the societal benefit of reinsurance policies: "This excess insurance … enables the insurance companies to write more policies than their reserves would otherwise sustain since it guarantees the ability to pay a part of all claims." *Id*.

Moreover, reinsurance agreements are separate and distinct from the original insurance contract.  The reinsurance contract is *not* with the insured/policyholder (i.e., Tellone) under the primary policy (i.e., the Policy issued by Allstate to Tellone). *Ascherman v. General Reinsurance Corp.*, 183 Cal. App. 3d 307, 311 fn. 5 (1986). The insured is not a party to the reinsurance contract and generally has no rights against the reinsurer or to the proceeds of the reinsurance.  Cal. Ins. Code § 623; see also Cal. Ins. Code § 922.2; *Zenith Ins. Co. v. Cozen O'Connor,* 148 Cal. App. 4th 998, 1007 (2007).

The reinsurance company's (i.e., HSB) obligation is to the insurance company (i.e., Allstate), and the insurance company vis-a-vis the reinsurer is thus the insured, or more appropriately, the "reinsured." *Excess & Cas. Reinsurance Ass'n v. Insurance Com'r, Etc*., 656 F.2d 491, 492 (9th Cir. 1981).  A reinsurer's liability is limited to the terms of its agreement with the primary insurer.  *Ascherman, supra*, 183 Cal. 3d at 312.  Further, an insured cannot sue as third-party beneficiary of a reinsurance contract because the contract is not "expressly" for his or her benefit: "A reinsurance contract is presumed to be for the benefit of the insurance company; the original insured has no interest in it." *Id.,* at 312.

Further, an essential feature of reinsurance is that it does not alter the terms, conditions or provisions of the contract between the insured (i.e., Tellone) and the primary insurer (i.e., Allstate). *Catholic Mut. Relief Soc'y,* 42 Cal. 4th at 369; *Lipton v. Superior Court,* 48 Cal. App. 4th 1599, 1617 (1996).  There is no privity of contract between a reinsurer and the insured under the primary policy. *Catholic Mut. Relief Soc'y,* 42 Cal. 4th at 369.  "Whereas primary liability insurers have a duty to investigate claims and defend lawsuits tendered to them by their insureds, reinsurers

have no comparable duties to investigate or defend claims between third parties and the underlying liability insurers or their insureds, nor do they owe any duty of good faith and fair dealing to the original insureds…" *Id*. (citations omitted).

Here, it is uncontroverted that HSB's reinsurance of Allstate or any other insurer is expressly permitted by law.  It is further undisputed that HSB did not enter into any agreements with Tellone in connection with the Policy and HSB is not mentioned in the Policy.  There is also no evidence whatsoever that HSB separately contracted with Tellone.  Moreover, Allstate has confirmed that it made the ultimate coverage determinations under the Policy, not HSB, and that Allstate would make any payments for policy benefits under the Policy directly to Tellone.  There is no evidence whatsoever suggesting that Allstate transferred any of its obligations under the Policy to HSB.

Accordingly, the undisputed evidence shows that Tellone's claim for unfair business practices against HSB under the "unlawful" prong of the UCL fails as a matter of law.

ii.   **The Reinsurance Agreement Between HSB and Allstate Did Not Alter Any of the Terms or Obligations Under the Policy and Thus There is Nothing Unlawful About HSB's Investigation of the Claim as a Reinsurer**

Tellone contends that the reinsurance agreement between HSB and Allstate provides that HSB would be the primary insurer of the coverage under the EB Endorsement and that HSB would be responsible for paying Tellone's claim under the EB Endorsement.  Tellone's contention is misplaced and unsupported for several reasons.

First, a careful review of the relevant portions of the reinsurance agreement shows that none of the Policy's terms or conditions were altered or modified by the reinsurance agreement – in other words, HSB did not assume any obligations pursuant to the Policy and Allstate, not HSB, remained liable to Tellone pursuant to the Policy.

Second, both Allstate and HSB have confirmed *under oath* that Allstate was responsible for paying Tellone's claims under the Policy and Allstate was responsible for making any ultimate coverage determinations for claims made under the Policy. There is no other evidence which disputes these facts.

Third, as affirmed by case law, there is nothing unlawful about HSB's participation in the investigation of claims for which it reinsures other carriers.  The *Three Rivers Hydroponics, LLC v. Florists' Mutual Insurance Company,* 2018 WL 791405 (W.D. Pa. 2018) decision is directly analogous to the issues here.

 In *Three Rivers*, Florists' Mutual Insurance Company ("Florists") issued a policy to the plaintiff.  HSB was Florists' reinsurer.  *Three Rivers*, *supra*, 2018 WL 791405 at *1.  The plaintiff filed claims for breach of contract, bad faith and civil conspiracy against both Florists and HSB arising from an insurance coverage dispute under the policy issued by Florists.  *Id*.  Plaintiff alleged that HSB somehow assumed a contractual duty *to plaintiff* with respect to HSB's investigation of the claims.  *Id*. at *2.  HSB filed a motion to dismiss.  *Id*. at *1.  In granting HSB's motion to dismiss, the court held in pertinent part:

> Plaintiff argues that HSB assumed a contractual duty to Plaintiff by the nature of the Reinsurance Agreement, which "assigned" Florists' duties with respect to investigating claims under the Policy to HSB; however, Plaintiff has identified nothing in the Reinsurance Agreement that relieved Florists of its obligations to Plaintiff in this regard. Rather, Florists and HSB entered into a contract and assumed obligations to each other—a common practice in the context of reinsurance and third-party claims investigators—but HSB did not directly assume any of Florists' obligations to Plaintiff under the Policy. Indeed, to adopt Plaintiff's interpretation of this arrangement absent evidence of a separate contract between Plaintiff and HSB would cut against established law, for "it is the general rule that an insured may bring claims for breach of contract and bad faith against the insurer who issued the policy but not against related parties, such as reinsurers and third party administrators, who are not in privity with the insured." *Brand v. AXA Equitable Life Ins. Co.*, No. 08-cv-2859, 2008 WL 4279863, at *2 (E.D. Pa. Sept. 16, 2008) (citing *Reid v. Ruffin*, 469 A.2d 1030, 1033 (Pa. 1983)).

10

*Id*. at 3.

The court in *Three Rivers* also held that the plaintiff did not qualify as a third-party beneficiary under the reinsurance agreement, noting that "[i]n those cases where a plaintiff has been permitted to bring a claim for breach of contract against a reinsurer …, it has been under circumstances where recovery was not possible from the original insurer." [Citation omitted.] That is simply not the case here. There is no indication that Plaintiff would be unable to collect a judgment from Florists." *Three Rivers*, 2018 WL 791405 at *4.

The *Three Rivers* court further rejected the plaintiff's argument that Florists was a "fronting" company for HSB and found that HSB could not be liable for bad faith. The court specifically found that:

> Plaintiff fails to convincingly explain why HSB filling both the reinsurer and claims investigator roles is different than an insurer obtaining a reinsurer and a separate claims adjuster, … Plaintiff's allegation that Florists is a "fronting" company for HSB is unpersuasive. This is not a case where an insured believed the reinsurer was its direct insurer, where the reinsurer was the insured's sole contact with their insurance company, or where the "fronting" insurance company bore no risk. [Citation Omitted.] Rather, Plaintiff purchased the Policy from Florists, not HSB; Florists retained its obligations to Plaintiff, including its duty to pay claims and settlements; and Florists continued to bear risk, ….
> …
> Florists issued the Policy, collected premiums, made payments to its insureds, and assumed risks and contractual obligations to its insured. Although HSB received the portion of premiums attributable to equipment breakdown coverage from Florists and assumed obligations under the Reinsurance Agreement, HSB assumed those obligations to *Florists*, and not to Plaintiff.

*Id*. at 4.

The *Three Rivers* decision clearly establishes that there is nothing unlawful or fraudulent about a reinsurer such as HSB participating in the investigation of a claim. As explained in *Three Rivers*, the fact that HSB undertook the roles of both a reinsurer and claims investigator is no different than an insurer obtaining a reinsurer and a

11

separate claims adjuster with respect to a certain claim.  Here, Tellone purchased the
Policy from Allstate, *not HSB*, and there is no privity whatsoever between HSB and
Tellone.  It is further undisputed that Allstate issued the Policy to Tellone, collected
the premiums, and retained its obligations to Tellone pursuant to the Policy, including
the duty to pay claims.  As such, contrary to Tellone's assertion, Allstate remains
liable for its obligations under the Policy irrespective of HSB's involvement in the
claim.

### B.    There is Nothing Unfair About Reinsurance

An unfair business practice under the UCL is "one that either offends an
established public policy or is immoral, unethical, oppressive, unscrupulous, or
substantially injurious to consumers."  *McDonald v. Coldwell Banker,* 543 F.3d 498,
506 (9th Cir.2008).  In determining whether a business practice is unfair, this Court
previously adopted a balancing test considering the following factors: "(1) a
substantial consumer injury; (2) the injury outweighs any countervailing benefits to
consumers or competition; and (3) the injury could not reasonably have been
avoided."  *Peel v. BrooksAmerica Mortg. Corp.*, 788 F.Supp.2d 1149, 1165 (C.D. Cal.
2011).

Here, HSB's reinsurance agreement with Allstate or any other insurers is in no
way "unfair" given that reinsurance is expressly permitted by law.  Additionally, as
mentioned above, California's Supreme Court has explained the societal benefits of
reinsurance as it allows insurance companies to write more policies.  *Catholic Mut.
Relief Soc'y,* 42 Cal. 4th at 368.

Moreover, Tellone's UCL claim relies on the unsubstantiated assertion that it is
unfair for it to have to deal with two different insurance carriers for its insurance
claim.  However, there is nothing immoral, unethical, oppressive, unscrupulous or
substantially injurious about having two insurers investigate the same claim because
in this instance, Allstate's reinsurance agreement with HSB does *not* alter the terms,
conditions or provisions of the Policy between Tellone and Allstate.  *Catholic Mut.*

1  *Relief Soc'y,* 42 Cal. 4th at 369; *Lipton,* 48 Cal. App. 4th at 1617.  Allstate remains

2  liable for its obligations under the Policy irrespective of HSB's involvement in the

3  claim.  In fact, Tellone's FAC specifically acknowledges that Allstate, as opposed to

4  HSB, would be liable under the Policy.  (See FAC, ¶ 100.)

5      Further, Tellone has failed to present any evidence explaining how Allstate's

6  and HSB's incentives are any different from an insurer investigating claims under any

7  other policy.  As this Court previously noted in its ruling on the motion for judgment

8  on the pleadings:

9      … the facts … do not suggest that HSB's involvement caused any delay
       or that Tellone suffered any unreasonably lengthy delay.  Moreover,
10     even to the extent Tellone alleges delay, it does not allege how it differs
       from that which would be inherent in a reinsurance relationship
11     between HSB and Allstate, which Tellone concedes would not be
       subject to a UCL claim.
12

13  *Tellone v. Allstate, et al*., *supra*, 2021 WL 1254360, at *5.

14      **C.**    **There is Nothing Fraudulent About Reinsurance**

15      Tellone incorrectly characterizes HSB's alleged conduct as fraudulent based on

16  the contention that HSB does not require other insurers to inform their insureds that

17  they essentially have to deal with two insurance companies on a claim.

18  Under the UCL, conduct is considered "fraudulent" if the conduct is "likely to

19  deceive."  *Pinel v. Aurora Loan Servs., LLC*., 814 F.Supp.2d 930, 941 (N.D. Cal.

20  2011).  "Although a UCL claim need not plead the elements of common law

21  fraudulent deception, it must allege the existence of a duty to disclose, as well as

22  reliance."  *Id*. (citations omitted).  "A duty to disclose exists if (1) the parties have a

23  fiduciary relationship; (2) defendant has exclusive knowledge of material facts not

24  known to plaintiff; (3) defendant actively conceals a material fact; or (4) defendant

25  makes partial representations to plaintiff and suppresses material facts."  *Marino v.

26  Countrywide Financial Corp.*, 26 F.Supp.3d 955, 963 (C.D. Cal. 2014), *aff'd* 602

27  Fed.Appx. 403 (9th Cir. 2015).

28      Here, Tellone has failed to allege that HSB somehow owed it or any other

13

1    insureds a duty to disclose that it was a reinsurer for certain insurers, including

2    Allstate.  First, it is well established that an insurer is not a fiduciary of its insured.

3    *Morris v. Paul Revere Life Ins. Co.,* 109 Cal. App. 4th 966, 973 (2003) ("An insurer is

4    not a fiduciary, and owes no obligation to consider the interests of its insured above its

5    own."); *Vu v. Prudential Prop. & Cas. Ins. Co*., 26 Cal. 4th 1142, 1150–51 (2001).  In

6    this case, Allstate is Tellone's insurer and thus Allstate does not owe any fiduciary

7    duties to Tellone.  Given HSB's status as a reinsurer for Allstate, HSB is even one

8    step further removed from the relationship between Allstate and Tellone.  As a

9    reinsurer for Allstate, and absent any privity whatsoever between HSB and Tellone,

10   there is no colorable argument Tellone can make to show that HSB is a fiduciary of

11   Tellone.  Therefore, HSB never owed Tellone a duty to disclose as a matter of law.

12        Notwithstanding the fact that HSB and Tellone do not have a fiduciary

13   relationship, the existence of reinsurance is not a *material* fact.  As explained above,

14   reinsurance is expressly permitted by law and does not alter the terms of the insurance

15   policy between Allstate and Tellone.  Tellone has no interest whatsoever in the

16   reinsurance relationship between Allstate and HSB.  Therefore, whether HSB, or any

17   of the other insurers which it reinsures, discloses to any insureds that reinsurance

18   exists is immaterial to the obligations between the insurers and the insureds.

19        Further, Tellone cannot show reliance.  In fact, the Policy specifically

20   contemplates reinsurance and provides notice to Tellone regarding such possibility

21   and its effect on the equipment breakdown coverage.  The Policy contains a

22   "California Changes – Cancellation and Nonrenewal" endorsement which provides

23   that Allstate may cancel the Policy if California's Commissioner of Insurance

24   determines that the "[l]oss of, or changes in, *our reinsurance covering all or part of*

25   *the risk* would threaten our financial integrity or solvency …"  (See Policy at Bates

26   No. P000047, italics added, attached as Exhibit 1 to Allstate's Notice of Filing of

27   Exhibits.)  Accordingly, reinsurance was always a possibility under the Policy and

28   Tellone cannot show that it relied on any concealment.

## V.   TELLONE DOES NOT HAVE ANY VALID BASES FOR ITS REQUESTED REMEDIES

Through Tellone's UCL claim against HSB, Tellone seeks (1) a preliminary and permanent injunction and (2) restitution.  While the UCL generally limits a plaintiff's remedies to injunctive relief and restitution (see *Cel-Tech Communications, Inc, supra,* 20 Cal. 4th at 179), Tellone's requests for such remedies fail as a matter of law.

### A.   Tellone's Request for an Injunction is Moot and Improper

Tellone seeks an injunction mandating that HSB disclose that it is the insurer for coverages "underwritten" by HSB.  Tellone's request is made on the erroneous assumption that HSB was involved in underwriting the Policy and should be denied.

As explained above, in this case, HSB is simply a reinsurer for Allstate and did not underwrite any portion of the Policy.  To reiterate, reinsurance is expressly permitted and there is nothing unlawful, unfair or fraudulent about reinsurance.  As Allstate's reinsurer, HSB has no privity with Tellone and owed Tellone no fiduciary duties.  Therefore, there is nothing for HSB to disclose to insureds such as Tellone regarding any alleged underwriting.

Moreover, injunctive relief may be improper if the effect of entering an injunction or other relief would call for detailed or day-to-day judicial supervision of regulated commercial activity.  See, e.g., *Wolfe v. State Farm Fire & Casualty Ins. Co*., 46 Cal. App. 4th 554 (1996); *Congress of California Seniors v. Catholic Healthcare West*, 87 Cal. App. 4th 491 (2001); *Samura v. Kaiser Foundation Health Plan, Inc*., 17 Cal. App. 4th 1284, 1302 (1993); *Diaz v. Kay-Dix Ranch*, 9 Cal. App. 3d 588, 599 (1970); *People ex rel. Dept. of Transportation v. Naegele Outdoor Advertising Co*., 38 Cal. 3d 509, 523 (1985).  Asking the Court to serve as a "watchdog" over all policies in which HSB has any involvement would require significant judicial supervision of regulated commercial activity.  Any potential benefit to the public would be minimal at best in comparison to the burden on judicial

1  resources.

2  Further, to the extent Tellone seeks an injunction regarding the manner in which

3  its insurance claim with Allstate was handled, such a request is moot and should not

4  be granted.  *See Nachum, supra*, 1997 WL 580522 at *8.  "[W]here an act or event

5  sought to be enjoined has been performed or has occurred, an appeal from the denial

6  of the injunction will be dismissed as moot.  *Matter of Combined Metals Reduction*

7  *Co.* 557 F.2d 179, 189 (9th Cir. 1977).

8  Here, the handling of Tellone's claim was resolved, albeit not to Tellone's

9  satisfaction, which precipitated this lawsuit.  Therefore, the conduct sought to be

10  enjoined has already occurred and is not continuing.  Consequently, Tellone's request

11  for an injunction to prohibit such past conduct is moot.

12  This Court further previously held that Tellone failed to plead sufficient facts to

13  support any proposition that any alleged harm is ongoing (see *Tellone v. Allstate, et*

14  *al.*, *supra*, 2021 WL 1254360 at *7), and Tellone has failed to present any facts

15  whatsoever since that time to support such proposition.  The two decisions this Court

16  previously found to be instructive – *Eastman v. Allstate Ins. Co*., 2014 WL 5355036

17  (S.D. Cal. 2014) and *Katzman v. Allstate Ins. Co*., 2010 WL 11515454 (C.D. Cal.

18  2010) – remain instructive as this Court noted that in each of those cases the courts

19  held that the plaintiffs could not pursue injunctive relief because they failed to allege

20  any facts demonstrating the alleged wrongs were the insurer's general practice and

21  were likely to recur against other insureds.  *Tellone v. Allstate, et al*., supra, 2021 WL

22  1254360 at *7.

23  ### B.    Tellone Has No Plausible Claim for Restitution

24  In order to prevail on a claim for restitution under the UCL, the "offending

25  party must have obtained something to which it was not entitled *and* the victim must

26  have given up something which he or she was entitled to keep."  *Day v. AT & T Corp*.,

27  63 Cal.App.4th 325, 340 (1998).

28  Here, Tellone's claim for restitution lacks merit for several reasons.  First,

1  Tellone has failed to present any evidence showing that HSB was not entitled to

2  receive anything from Allstate with respect to its reinsurance of Allstate.

3       Second, HSB did not receive anything from Tellone. Tellone merely alleges

4  that HSB should be ordered to return its share of the premiums paid on the Policy.

5  However, Tellone paid the premiums payments for the Policy directly to Allstate, not

6  to HSB. Therefore, HSB would not have anything to return to Tellone as HSB

7  collected nothing from Tellone. Any compensation HSB might have received would

8  have come directly from Allstate to HSB pursuant to the reinsuring arrangement – an

9  arrangement Tellone has no interest in whatsoever.

10       Third, to the extent Tellone is seeking restitution for non-parties, Tellone has

11  failed to present any evidence whatsoever to support its contention that HSB received

12  any money that these unnamed, unidentified "non-parties" were entitled to keep.[6]

13  Tellone's allegations in this action focus on Allstate's alleged inadequacy of the

14  handling of its insurance claim – no specific reference to the handling of other claims

15  by other insureds are mentioned at all in the FAC. As such, Tellone's unfair business

16  practices claim simply does not allege any unfair business practices applicable to other

17  insureds for which restitution could even be entertained.

18       Further, even if Tellone could adequately allege any unfair business practices

19  committed by HSB against these other non-party insureds, Tellone cannot sue on

20  behalf of these non-parties for the type of restitutionary relief sought in this case. *See*

21  *Nachum, supra,* 1997 WL 580522 at *6 (C.D. Cal. 1997.) As explained in *Nachum,*

22  in order for Tellone to proceed on behalf of non-parties, it "would essentially have to

23  litigate the individualized bad faith claims of each currently unidentified non-party.

24  Such a state of affairs would be highly impractical and would raise serious due

25

26

27  [6] This Court previously found that Tellone's conclusory allegations did not support its claims for restitution. *Tellone v. Allstate, et al.*, supra, 2021 WL 1254360 at *7.

28  Nevertheless, Tellone has failed to heed this Court's prior warnings regarding the deficiencies with its claims.

1    process concerns." *Id*.

2    **VI.    TELLONE ADMITS IT HAS AN ADEQUATE REMEDY AT LAW**

3           Notwithstanding the fact that Tellone lacks any factual support for its UCL

4    Claim, Tellone has conceded on multiple occasions that it has an adequate remedy at

5    law which further demonstrates that it cannot maintain the UCL Claim against HSB.

6           The UCL provides for equitable relief only.  *See Cel-Tech Communications,*

7    *Inc.* 20 Cal. 4th 163 at 179.  An adequate legal remedy precludes a party from seeking

8    equitable relief.  *See Knox v. Phoenix Leasing Inc.,* 29 Cal. App. 4th 1357, 1365

9    (1994); s*ee also E.A. Taliaferro v. Dorothy Taliaferro,* 144 Cal. App. 2d 109, 113

10   (1956).  Therefore, to maintain a cause of action for equitable relief, a plaintiff must

11   plead facts "showing that the wrongful act constitutes an actual or threatened injury to

12   property or personal rights which cannot be compensated by an ordinary damage

13   award."  *Brownfield v. Daniel Freeman Marina Hosp.,* 208 Cal. App. 3d 405, 410

14   (1989).  This rule also applies to UCL claims.  *See Prudential Home Mortgage Co. v.*

15   *Superior Court,* 66 Cal. App. 4th 1236, 1250 (1998).

16          Tellone previously admitted in its opposition to HSB's motion for judgment on

17   the pleadings that it has an adequate remedy at law – namely that it "could have also

18   sued HSB for breach of contract and tortious breach of the covenant of good faith and

19   fair dealing … but chose not [*sic*] do so because Tellone has adequate legal remedies

20   against Allstate for breach of contract and tortious breach of the covenant of good

21   faith and fair dealing."  (See Tellone's Opposition to HSB's Motion for Judgment on

22   the Pleadings, p. 19 lines 6-10; ECF No. 32; UF No. 13.[7])  Further, at the hearing on

23   HSB's prior motion for judgment on the pleadings, Tellone's counsel admitted to this

24   Court that Tellone could have sued HSB for breach of contract but elected not to.

25

26

27   [7] Factual assertions in pleadings, unless amended, are considered judicial admissions conclusively binding on the party who made them.  *See Gospel Missions of Am. v.*

28   *City of Los Angeles*, 328 F.3d 548, 557 (9th Cir.) (Courts "have discretion to consider a statement made in briefs to be a judicial admission[.]").

Tellone's counsel and this Court discussed as follows at the hearing:

THE COURT: … If [HSB is] a party to the contract, why wouldn't you have a contract claim against them?

MR. BROWER: I guess maybe we actually would and should, but I don't -- maybe I don't think there is a need. …

THE COURT: I think the real answer is: You don't have a claim against them, because they're not a party to the contract. I don't think you have any legal -- there's nothing you've shown that you've alleged in your complaint that would show that you had -- that they are actually, in fact, a party, the true legal definition of that or that you have any contract claim against them.

* * *

THE COURT: … And I believe that the most efficient way of resolving this is to determine if there's a reinsurance agreement.

* * *

THE COURT: …Mr. Brower has already stated that he does not have a claim, if this is reinsurance.  So to pursue -- there would be a significant Rule -- speaking of Rule 11, there would be a significant Rule 11 problem, if it were pursued after that.

(Transcript from September 25, 2020 hearing[8], 10:11-11:2, 23:16-18, and 27:2-6.)

---

[8] Relevant portions of the transcript from a September 25, 2020 hearing in this action are attached to the Turner Decl. as Exhibit F.

While HSB in no way concedes that Tellone has standing to bring claims against HSB for breach of contract and bad faith, Tellone's own admissions demonstrate that it has no valid basis for asserting a UCL claim against HSB.

Tellone has conceded that it specifically made the tactical decision not to bring claims for breach of contract and bad faith against HSB, even though it asserts it could have.  If Tellone had an adequate legal remedy against HSB (i.e., breach of contract and/or bad faith) – but "chose" not to pursue it – then it cannot prosecute a claim under the UCL.  Even without the supposed breach of contract and bad faith claims against HSB, Tellone admittedly still has an adequate legal remedy through its breach of contract and bad faith claims against its actual insurer – Allstate.

Moreover, as this Court previously held, Tellone is precluded from pursuing an equitable monetary claim to the extent its claim is based on breach of the Policy and the implied covenant of good faith and fair dealing.  *Tellone v. Allstate, et al*., supra, 2021 WL 1254360 at *8.

## VII.   CONCLUSION

Based on the foregoing, HSB respectfully requests that the Court grant HSB's summary judgment motion as there are no genuine disputes as to any material fact and HSB is entitled to judgment as a matter of law.


DATED:  July 22, 2021                    JONES TURNER, LLP


                                           _/s/Steven D. Turner_
                                            Steve D. Turner
                                            William S. Hoang
                                            Attorneys for Defendant
                                           THE HARTFORD STEAM BOILER
                                           INSPECTION AND INSURANCE COMPANY

1

## **PROOF OF SERVICE**

2

I am employed in the County of Orange, State of California.  I am over the age

3 of 18 and not a party to the within action; my business address is 2 Venture, Suite 220,

4 Irvine, California 92618.

5

On July 22, 2021, I served the following document described as:

6 **THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE
COMPANY'S RESPONSES TO PLAINTIFF TELLONE PROFESSIONAL**
7 **CENTER LLC'S INTERROGATORIES, SET TWO**

8 on all interested parties as follows:

9

| | |
|---|---|
| Steven Brower<br>Steve@BrowerLawGroup.com<br>Tae J. Im<br>Tae@BrowerLawGroup.com<br>BROWER LAW GROUP<br>A Professional Corporation<br>23601 Moulton Parkway, Suite 220<br>Laguna Hills, CA 92653<br>Telephone: (949) 668-0825<br>***Attorneys for Plaintiff***<br>***Tellone Professional Center LLC*** | John D. Edson<br>JEdson@sheppardmullin.com<br>Daniel Nadal, Esq.<br>DNadal@sheppardmullin.com<br>SHEPPARD, MULLIN, RICHTER &<br>HAMPTON LLP<br>501 West Broadway, 19th Floor<br>San Diego, CA 92101<br><br>***Attorneys for Defendant, Allstate***<br>***Insurance Company*** |

10

11

12

13

14

15

16

17 **[X] BY ELECTRONIC MAIL**: Based on agreement of the parties to accept service

18 by e-mail or electronic transmission, I caused the documents to be sent to the persons

19 at the e-mail addresses listed above. I did not receive, within a reasonable time after

20 the transmission, any electronic message or other indication that the transmission was

21 unsuccessful.

22 **[X] FEDERAL:** I declare under penalty of perjury under the laws of the United States

23 that the foregoing is true and correct. I declare that I am employed in the office of an

24 attorney admitted to the bar of this Court at whose direction the service was made.

25

Executed on July 22, 2021at Irvine, California.

26

*/s/ Jacquelynn Dickendasher*
Jacquelynn Dickendasher

27

28